UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES of AMERICA )<br>)<br>v. )<br>)<br>RICARDO RODRIGUEZ, )<br>)<br>Defendant. )<br>) | Criminal No.<br>07-40030-FDS-1 |

**MEMORANDUM AND ORDER ON
MOTION TO VACATE SENTENCE**

**SAYLOR, J.**

Petitioner Ricardo Rodriguez has moved to vacate his sentence under 28 U.S.C. § 2255, contending that he received ineffective assistance of counsel during his sentencing proceeding and should be re-sentenced as a result.

For the reasons set forth below, the motion will be denied.

**I.   Background**

   **A.   The Conviction**

On July 7, 2008, Ricardo Rodriguez pleaded guilty to an indictment charging him with two counts of possessing an unregistered firearm (Counts 1 and 4); two counts of transferring an unregistered firearm (Counts 2 and 5); and two counts of being a felon in possession of a firearm (Counts 3 and 6). The charges were based on Rodriguez's sale of a sawed-off shotgun and an AK-22 rifle, whose barrel also been shortened, to an undercover police officer in 2006.[1]

---

[1] A third firearm was found to be relevant for sentencing purposes.

### B.     The Initial Sentencing

At the time of his initial sentencing, the Probation Office calculated Rodriguez's Total Offense Level ("TOL") to be 29 and his Criminal History Category to be IV, resulting in a Guidelines sentencing range ("GSR") of 121 to 151 months.  The TOL of 29 resulted from a base offense level ("BOL") of 26 under USSG §2K2.1(a)(1), because the offense involved a firearm described at 26 U.S.C. §5845(a) and Rodriguez committed the offense after having been convicted twice for crimes of violence; an increase of two levels under USSG §2K2.1(b)(1)(A), because the offense involved three firearms; an increase of four levels under USSG §2K2.1(b)(5), for trafficking in firearms; and a reduction of three levels under USSG §§3E1.1(a) and (b) for acceptance of responsibility.  In making those calculations, the Probation Office used the 2008 Guidelines Manual.

Rodriguez did not object to the use of the 2008 Guideline Manual in his written objections to the PSR or in his sentencing memorandum.  On March 20, 2009, the Court conducted a sentencing hearing, and adopted the Guidelines calculations set forth in the PSR. The government recommended a sentence within the advisory GSR.  Rodriguez's counsel, in turn, recommended a sentence of four years, arguing that it was warranted due to Rodriguez's academic struggles, his learning disability, his history of employment, his conduct while in prison awaiting sentencing, and his family situation.

The Court granted Rodriguez a one-level downward departure under USSG §4A1.3(b)(1) on the ground that his criminal history category overrepresented the seriousness of his criminal history.  The Court sentenced Rodriguez to concurrent terms of imprisonment of 108 months on Counts 1 through 5 and 68 months on Count 6—at the bottom of the revised advisory GSR of

108 to 135 months—to be followed by three years of supervised release.

### C. The Appeal

On appeal, Rodriguez argued that the 2008 guidelines exposed him to a heavier sentence by virtue of the four-level increase for trafficking firearms, an enhancement that the 2005 Guidelines Manual—applicable at the time he committed he committed his crime—does not contain. He contended that his sentence violated the Ex Post Facto Clause of the United States Constitution.

Although Rodriguez had failed to raise the issue before this Court, the First Circuit nonetheless found plain error due to the mistake in calculating the appropriate GSR. *See United States v. Rodriguez*, 630 F.3d 39, 40-43 (1st Cir. 2010).[2] As a consequence, the First Circuit directed that Rodriguez be re-sentenced, utilizing the 2005 Guidelines and the GSR "applicable under the Guidelines in effect at the time of the crimes (70–87 months)." *Id.* at 43.

### D. The Re-Sentencing

After remand, the parties initially appeared before the Court on May 20, 2011. At that time, the Court noted that the First Circuit's calculation of the GSR (70-87) months was technically incorrect. Instead, the GSR utilizing the 2005 Guidelines would be 84-105 months, and, if a downward departure were granted based on criminal history, the revised GSR would then be 70-87 months. There was no objection to that calculation. *Id.*

Rodriguez's re-sentencing took place on June 2, 2011. The Court repeated its earlier guideline calculation, concluding that Rodriguez's TOL was 25, and his Criminal History

---

[2] The First Circuit held that the sentencing court must, as an initial matter, correctly determine the GSR. *See, e.g., Gall v. United States*, 552 U.S. 38, 49–50 (2007); *Rita v. United States*, 551 U.S. 338, 350 (2007). It did not reach the constitutional issue.

Category was IV.  The Court then granted a downward departure based upon the fact that Rodriguez's criminal history category overstated the seriousness of his criminal history.  That resulted in a revised GSR of 70-87 months.  *Id.*  The parties agreed with the Court's calculation.

The government requested a sentence of 84 months.  Rodriguez's attorney advocated for a sentence of 70 months.  The Court ultimately imposed a sentence of 78 months.

### E. The Motion to Vacate

On March 16, 2012, Rodriguez filed the present motion.  He seeks resentencing to the bottom of his revised GSR or a possible further downward departure.

Rodriguez contends that his attorney was ineffective in failing to object to the inclusion of "recency points" in his criminal history.  While such points were properly calculated utilizing the 2005 Guidelines, Rodriguez argues that his attorney should have known that the enhancement for recency was eliminated in November 2010.[3]  He contends that the failure to object was prejudicial because this objection would have lowered his criminal history category even further, thereby lowering his GSR.[4]

## II. Analysis

### A. Petitioner's Claim Has Been Procedurally Defaulted

Petitioner could have, but did not, raise his claim on a direct appeal.  His claim has therefore been procedurally defaulted.  "[A] defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the

---

[3] The enhancement based upon recency points was eliminated in November 2010.  *See, e.g., United States v. Diaz*, 670 F.3d 332, 353 (1st Cir. 2012).

[4] Rodriguez also contends that his attorney convinced him to waive the right to pursue a direct appeal, although it appears that this claim is advanced as an explanation of why the "recency points" claim is not procedurally defaulted, rather than as an independent basis for relief.

defendant can demonstrate cause for the failure and prejudice or actual innocence." *Berthoff v. United States*, 308 F.3d 124, 127–28 (1st Cir. 2002) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)).

### B.     Petitioner's Claim Fails on the Merits

Petitioner's claim also fails on the merits. To prevail on a claim of ineffective assistance of counsel, petitioner must show that: (1) his attorney's performance was deficient, meaning it "fell below an objective standard of reasonableness;" and (2) prejudice resulted, meaning that "but for his counsel's deficiency, there is a reasonable probability that [petitioner] would have received a different sentence." *Peralta v. United States*, 597 F.3d 74, 79 (1st Cir. 2010) (citations and quotations omitted).

As noted, petitioner contends that his attorney was ineffective for failing to object to the use of "recency points" to calculate his criminal history and, by extension, for failing to argue for a below-guideline sentence. However, counsel's performance was not deficient, and there was no prejudice to petitioner.

#### 1.     Counsel's Performance Was Not Deficient

On appeal, petitioner successfully argued that he should have been sentenced pursuant to the version of the Guidelines in effect at the time he committed his crime (that is, the 2005 Guidelines). Upon re-sentencing, the 2005 Guidelines, including the provision for "recency points," were applied.

Any objection counsel might have made to the Court's reliance upon the 2005 Guidelines, including the use of "recency points," would have been futile. The Court of Appeals ordered that re-sentencing occur pursuant to the 2005 Guidelines. This Court was not free to

5

disregard that mandate. Furthermore, having successfully pursued an appeal demanding that the 2005 Guidelines be applied, the law of the case doctrine affirmatively barred Rodriguez (and his attorney) from arguing that he should be sentenced under some other version of the Guidelines on remand. *See, e.g., United States v. Medina-Villegas*, 700 F.3d 580, 585 (1st Cir. 2012). In short, counsel was not deficient for failing to take a legal position contrary to the position his client had successfully argued on appeal.

More importantly, the Guidelines themselves do not permit picking and choosing provisions from different manuals. The "one-book rule" provides:

> (b)(1) If the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the ex post facto clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed.
>
> (2) ***The Guidelines Manual in effect on a particular date shall be applied in its entirety. The court shall not apply, for example, one guideline section from one edition of the Guidelines Manual and another guideline section from a different edition of the Guidelines Manual.*** However, if a court applies an earlier edition of the Guidelines Manual, the court shall consider subsequent amendments, to the extent that such amendments are clarifying rather than substantive changes.

USSG § 1B1.11(b) (emphasis added). *See also, e.g., United States v. Springer*, 28 F.3d 236, 237-238 (1st Cir. 1994).[5]

In short, Rodriguez argues that his attorney was ineffective for (1) following through on his own appellate position and (2) following the explicit instructions of the Guidelines. This was not deficient performance sufficient to support a claim of ineffective assistance.

---

[5] It is undisputed that counsel could have argued for a non-guideline sentence. What counsel could not do is ask this Court to disregard the Guidelines in reaching the GSR.

### 2. **Petitioner Cannot Establish Prejudice**

Even if it were assumed that some error occurred, there has been no prejudice to petitioner. To the extent that counsel advocated for a lower sentence, whether based upon criminal history or some other ground, such an argument would have been futile. As this Court stated:

> . . . I am going to impose a 78-month sentence. . . . It is intended to take into account both the difference in the Guidelines as a starting point and to minimize disparity with other similarly sentenced offenders, and also to acknowledge his apparent progress while in the prison system.
>
> *I do not think . . . given the very serious nature of the crime and the other circumstances here, that I can quite go all the way down to 70 months, as has been requested.*

Exhibit 1, p. 17-19. Accordingly, there is no basis to conclude that argument for an even lower sentence would have altered the outcome in any way.

## IV.    Conclusion

For the foregoing reasons, the motion to vacate sentence pursuant to 28 U.S.C. § 2255 is DENIED.

**So Ordered.**

                                        /s/ F. Dennis Saylor
                                        F. Dennis Saylor IV
                                        United States District Judge

Dated:  May 13, 2013